IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

UNITED STATES OF AMERICA      §
Plaintiff,                    §
                              §
                              §
v.                            §        NO: 6:26-CV-00169
                              §
516,332.72 USDT               §
Defendant.                    §

## AFFIDAVIT IN SUPPORT OF COMPLAINT FOR FORFEITURE

I, Brad Schley, after being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the United States Secret Service (USSS) and have been so employed since September 2001.  My current position is the Resident Agent in Charge (RAIC) of the USSS Tyler Resident Office.  During my tenure with the Secret Service, I have been assigned to investigate violations of federal laws, including violations of Title 18 of the United States Code, specifically those related to the passing of counterfeit United States currency, money laundering, and wire fraud.  I received criminal investigative training at the Federal Law Enforcement Training Center in Glynco, Georgia, and at the James J. Rowley Secret Service Training Center in Beltsville, Maryland, pertaining to criminal investigations of counterfeit currency, bank fraud, money laundering, wire fraud, access device fraud, and identity theft.   During my employment with the USSS, I have conducted investigations resulting in the arrest of suspects and seizures of criminally derived property.  I am an investigative and law

**Affidavit – Page 1**

enforcement officer of the United States, in that I am empowered by law to conduct investigations and to make arrests for felony offenses, under authority of 18 U.S.C. § 3056.

2.      The statements contained in this affidavit are based in part upon my experience, my knowledge of the facts and circumstances surrounding this investigation, and on information provided to me by other law enforcement personnel and other witnesses.

## PROPERTY FOR FORFEITURE

3.      This Affidavit is made in support of a civil forfeiture complaint concerning the following personal property:

    a.      201,801.06313 USDT in wallet address (Target account A) 0x0D741AD4bA4801fAAE3947005af557AbB08B7cB1;

    b.      15,200.63581 USDT in wallet address (Target Account B) 0xfb156F24f1c0e36095edc66523F8eDb563Da991A; and

    c.      299,331.025396 USDT in wallet address (Target Account C) 0x74D3CD5Ed77781f04405B5F11458a062BC4123C3

that totals 516,332.72 USDT and was seized on or about March 10, 2026, in Tyler, Texas pursuant to seizure warrant 6:25-MJ-167.

## LEGAL AUTHORITY FOR FORFEITURE

4.      The funds to be forfeited represent proceeds of multiple business email compromise fraud schemes.  A business email compromise (BEC) fraud scheme usually involves businesses or organizations that utilize a large amount of wire transfers during

**Affidavit – Page 2**

the normal course of their business.  Generally, the victims report to be contacted via email by unknown subjects who were believed to be trusted business partners.  Eventually, the conversation between the victim and the unknown subjects shifts from changing current payment protocols to different bank accounts.  The victim believes they made their proper payments for goods and services, while in reality, the funds are laundered through a series of money mule accounts.  Eventually, the victim learns of the fraud scheme when they do not receive the various goods or services, or are contacted by the legitimate intended payee who advises they did not receive payment.  These funds are then laundered through various bank accounts and are eventually converted to cryptocurrency through US based and other exchanges.

5.    I also have probable cause to believe that this property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) because the property constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343 or a conspiracy to commit such offense (18 U.S.C. § 1349).  Wire fraud is an SUA.

6.    Any property, real or personal, which constitutes proceeds or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343 or 1349 is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

7.    Under 18 U.S.C. § 984, for any forfeiture action in rem in which the subject property consists of cash, monetary instruments in bearer form, or funds deposited in an account in a financial institution:

**Affidavit – Page 3**

a. The government need not identify the specific funds involved in the offense that serves as the basis for the forfeiture;

b. It is not a defense that those funds have been removed and replaced by other funds; and

c. Identical funds found in the same account as those involved in the offense serving as the basis for the forfeiture are subject to forfeiture.

8. In essence, 18 U.S.C. § 984 allows the government to seize for forfeiture identical property found in the same place where the "guilty" property had been kept.

## FACTS SUPPORTING FORFEITURE

9. The United States is investigating a business email compromise fraud scheme involving victims located within the Eastern District of Texas and elsewhere. The investigation concerns possible violations of, inter alia, 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) and 18 U.S.C. §§ 1956 and 1957 (Laundering of Monetary Instruments).

10. This investigation has revealed that the Tether deposit addresses 0x0D741AD4bA4801fAAE3947005af557AbB08B7cB1(Target Account A), 0xfb156F24f1c0e36095edc66523F8eDb563Da991A (Target Account B), and 0x74D3CD5Ed77781f04405B5F11458a062BC4123C3 (Target Account C) received proceeds from various wire fraud schemes within the United States.

**Affidavit – Page 4**

11.     Specifically, in August 2024, The United States Secret Service (USSS) Tyler Resident Office began an investigation of a criminal money laundering syndicate operating business email compromise scams.  This investigation has discovered that once the victims send their funds to a domestic bank account, the funds are laundered through additional domestic accounts and are eventually sent to a cryptocurrency exhange where the fiat currency is exchanged for cryptocurrency.

12.     Once the cryptocurrency is initially purchased, it is further laundered through a series of transactions and conversions in an attempt to obsfucate the original source of the funds.  Law enforcement personnel in the USSS Tyler Resident Office have worked with cryptocurrency exchanges to identify the account holders receiving these proceeds and further trace the proceeds to addtional cryptocurrency deposit addresses.

13.     This investigation was initiated when the affiant was notified by a Texas Bank and Trust[1] (TB&T) bank employee, that a TB&T customer sustained a loss of approximtely $600,000 when the business customer reported to be a victim of a BEC fraud scheme.

14.     Specifically, the victim identified as Lapetco, Inc, was involved in a legitimate business transaction with Pontem Energy Partners, LP and discussed the business transaction via email with an attorney.  In fact, as part of this deal Lapetco, Inc conducted two successful transactions for this business transaction.

---

[1] Texas Bank and Trust is a financial institution headquartered in Longview, Texas within the Tyler Division of the Eastern District of Texas.

**Affidavit – Page 5**

15.     However, on or about July 31, 2024, the parties involved in the transaction who represented Lapetco, Inc and Pontem Energy Partners received an email from someone who mimicked the legitimate attorney's email address domain, @rfhfirm.com, by adding an "l" between the f and h, @rflhfirm.com.  This new email advised the group that the wire/payment information for the transaction has changed and updated bank information would be provided.

16.     The new bank information was sent by a mimicked email and advised the funds for this business transaciton should be sent to the Citizens Bank account number 6318290242 in the name of Pontem Energy Partners LP.

17.     On or about July 31, 2024, Lapetco employees followed the newly received instructions and sent approximately $600,000 from their TB&T account to the Citizens Bank account number 6318290242 in the name of Pontem Energy Partners LP.

18.     On or about August 2, 2024, Lapetco employees were notified by the intended business partner that they have not received the $600,000 for their business transaction.  As a result, the fraudulent nature of the emails were discovered and was reported to the Addison Texas Police Department under report number 24-8302.

19.     These illicit redirected funds along with other identified victim funds passed through several domestic bank accounts that were opened in various company names with no legitimate business purpose other than to launder BEC victim fraud

**Affidavit – Page 6**

proceeds.  The victim funds ultimately were sent to online cryptocurrency accounts resolving at Kraken.

20.     Records were obtained for the six identified Kraken accounts by USSS TFO John Partlow via subpoena.  Kraken provided records for each of these accounts which reflected the accounts were opened with false identifications utilizing various business and personal identifying information.  Many of the accounts were opened with a common false identification photo later identified as Daniel Lee Sallay.

21.     Once the illicit funds were deposited into the fraudulently opened Kraken accounts, the illicit funds were converted to Tether (USDT) and transferred to USDT private wallets.  The affiant identified that the Kraken accounts were sending USDT to common receiving USDT private wallet 0x95aC3e931986a3207C494c54683ba83b614d456d (0x95).  USSS investigators reviewed cryptocurrency tracings and determined that 0x95 also had other common connected private USDT wallets being utilized.  Specifically, private USDT wallet 0x28EC46Ae3B48eE7561E0D20E6C9Dd650BFB61e33 (0x28) was directly associated with 0x95.

22.     On December 17, 2024, USDT wallet 0x95 was seized by the US Secret Service pursuant to Seizure Warrant (6:24-MJ-286) being issued in the Eastern District of Texas.

**Affidavit – Page 7**

## ASSOCIATED FRAUDULENT KRAKEN ACCOUNTS TO TARGET PROPERTIES

23.     Records pertaining to Kraken account AA85N84GAYCXNVFI (NVFI) were obtained by USSS TFO John Partlow via subpoena.  The records indicate that Kraken account NVFI was opened on or about May 6, 2024, and held in the name of Finven Concepts LLC.  The account opening records included a photograph of a state of Illinois Driver's License bearing the name James Levin; indexed under number L150-4577-0145 and date of birth May 21, 1970.  Also included was a selfie of an individual purporting to be James Levin whose image matched that contained on the driver's license.  NLETS database queries indicate the information contained on the driver's license was not genuine.

24.     During the investigation of Finven Concepts LLC and its association with wallet address 0x28, investigators identified transactions that were received from Kraken account AA89N84G6O25XLCY.

25.     Associated records were obtained from Kraken by USSS TFO John Partlow via subpoena.  Kraken account AA89N84G6O25XLCY (XLCY) was opened on or about August 2, 2024, and held in the name of Shirk Roofing LLC.  The account opening records included a photograph of a state of Illinois Driver's License bearing the name David Shirk; indexed under number S620-1607-1270 and date of birth September 22, 1971.  The driver's license photo was identical to the fraudulent drivers licensed used to open Kraken account NVFI.  Also included was an identical selfie as in Kraken account

Affidavit – Page 8

NVFI.  XLCY selfie was purporting to be David Shirk whose image matched that contained on the driver's license.  NLETS database queries indicate the information contained on the driver's license was also not genuine.

26.    Records for Kraken account XLCY had identified a connected Regions bank account number 0361204579 (4579) in the name of Shirk Roofing LLC.  On June 25, 2025, Regions records reflected that account 4579 received a wire transfer credit in the name of victim R.I. for $995,383.00.

27.    On June 26, 2025, Regions account 4579 also received a wire transfer credit from a Citibank, N.A. account in the name of Shad Consulting LLC for $261,200.00.  Records were obtained from Citibank that identified the Shad Consulting LLC account received a wire transfer in the name of victim R.I. for $995,383.00 on June 23, 2025.

28.    On June 27, 2025, Regions account 4579 received a wire transfer credit in the name of Rales Marble LLC, Citibank N.A. for $99,200.00.  Records were obtained from Citibank pertaining to Rales Marble LLC.  These records indicate this account received a $100,000.00 wire deposit from an account in the name of Rosenthal Autosales LLC held at JP Morgan Chase on June 27, 2025.

29.    Records were also obtained from JP Morgan Chase that identified a $100,000.00 wire deposit on June 26, 2025, from the Citibank account in the name of Shad Consulting LLC referenced above.

30.    Records were obtained from Citibank that identified the Shad Consulting LLC account received a $995,383.00 wire deposit on June 23, 2025, in the name of victim R.I.

31.    Victim R.I. was interviewed and reported that they were a victim of a BEC scam while attempting to disburse inheritance funds as the family executor.  As a result, the fraudulent nature of the emails was discovered and was reported to the Spring Lake Heights, New Jersey Police Department under report number 25-20028.  Victim R.I. reported that a total of $2,986,149.00 was fraudulently disbursed to several unknown bank accounts.

32.    On the following dates, a total of $1,353,400.00 that were derived from victim R.I. were sent from Regions account 4579 to Kraken:

    a.    June 25, 2025: $455,000.00 to Kraken account XLCY

    b.    June 26, 2025: $791,300.00 to Kraken account XLCY

    c.    June 27, 2025: $107,100.00 to Kraken account XLCY

33.    USSS investigators analyzed the transactions and determined the Kraken account XLCY styled in the name of Shirk Roofing LLC had converted all the fiat currency received from Regions account 4579 to USDT.

34.    From June 25, 2025, to July 14, 2025, the below listed transactions resulted in approximately 516,322.573342 USDT being deposited in the TARGET ACCOUNTS: 0x0D741AD4bA4801fAAE3947005af557AbB08B7cB1 (TARGET ACCOUNT A);

0xfb156F24f1c0e36095edc66523F8eDb563Da991A (TARGET ACCOUNT B); and

0x74D3CD5Ed77781f04405B5F11458a062BC4123C3 (TARGET ACCOUNT C).  The

below transactions are also reflected in Exhibit 1, which is attached to this affidavit:

    a.     6/25/25: Transfer of 450,746.7143 USDT from Kraken account number AA89N84G6O25XLCY in the name of Shirk Roofing LLC to 0xa9e10c81CD353f15D99545961dd018cf14E834e8 (0xa9) (TX ID# 0xc12afb7513e5692e73be6f2b85c324d91a92e67980217f1f2fe16c452447dfd8)

    b.     6/25/25: Transfer of 450,746.7143 USDT from 0xa9 to 0xECA75Af3a510127CF78a302cCeE1204Dfd5c56e7 (0xEC) (TX ID# 0x9c86ae36061f79118ced6a132e6118afdd1b8100f8f3597870faf757f2ef23ee)

    c.     6/25/25: Transfer of 225,000 USDT from 0xEC to **0x0D741AD4bA4801fAAE3947005af557AbB08B7cB1 (TARGET ACCOUNT A)** (TX ID# 0x741d650a522e6a9faa717e5d5e98c5b4c9d24c2c7dbaa5998415004c6679e110)

    d.     6/25/25: Transfer of 150,000 USDT from **TARGET ACCOUNT A** to **0xfb156F24f1c0e36095edc66523F8eDb563Da991A (TARGET ACCOUNT B)** (TX ID# 0xba2c3f16473976f0d44d6b9acddaa5231a0c884385936305d1505a3a71cd73f5)

    e.     6/26/25: Transfer of 784,005.7023 USDT from Kraken account number AA89N84G6O25XLCY in the name of Shirk Roofing LLC to 0xa9 (TX ID# 0xb51772765be22f611971df85d89e3e129391399d8840220c9886abf60fe35577)

    f.     6/26/25: Transfer of 784,005.7023 USDT from 0xa9 to 0x4EE26E8E983264c7028CDe0fAD38956cE0C83644 (0x4E) (TX ID# 0x77f6a65b8870d5b8e5891c8bd75df8f0b408c4a649a1f92c26bfdb9d194abc80)

    g.     6/26/25: Transfer of 266,400 USDT from 0x4E to **TARGET ACCOUNT A** (TX ID# 0xf35d64575feb40107af003554178f9d35a1107b45cad0b93d64fdebc19f6346e)

    h.     6/26/25: Transfer of 169,600 USDT from **TARGET ACCOUNT A** to **TARGET ACCOUNT B** (TX ID# 0xf57e271124d9a616d9792cb5a1db21226e47f4090c5046837b90156c621f9cd9)

**Affidavit – Page 11**

i.    6/26/25: Transfer of 517,605.7023 USDT from 0x4E to 0xEC (TX ID# 0xfffa2e021382d633a836f09c8cc92892002543476ad1ea5eda13b55fbc5d0fc8)

j.    6/27/25: Transfer of 106,117.3122 USDT from Kraken account number AA89N84G6O25XLCY in the name of Shirk Roofing LLC to 0xa9 (TX ID# 0xfb90c470539309605c825d19c958ffefb4cf9cef2f9e12ce5d639c5507f37c31)

k.    6/27/25: Transfer of 106,117.3122 USDT from 0xa9 to 0x4E (TX ID# 0x75011b53e1ab56cb52698211efe1f2f8baf1c3ee558b080807cc121e6d19e0a5)

l.    6/28/25: Transfer of 145,000 USDT from 0xEC to **TARGET ACCOUNT A** (TX ID# 0x00f8ec589290ac2649857baaaeab31106d77681b9ef94c26c7f8d4186eda2d16)

m.    6/28/25: Transfer of 115,000 USDT from **TARGET ACCOUNT A** to **TARGET ACCOUNT B** (TX ID# 0xa6698525ba6b00872e1fdfa97895bb629b531b809be165e0284fb49d35db4612)

n.    7/4/25: Transfer of 86,117.323466 USDT from 0x4E to 0xEC (TX ID# 0x7f60536f5832104c473e1920bd652b9f569b3435af937d118a50e1d00bd3b1e2)

o.    7/8/25: Transfer of 402,439.787143 USDT from 0xEC to 0x24c301ff85613ff6C6c0398A002707718A094837 (0x24) (TX ID# 0xa9b7bab80314556326a2e72295f03cfb24d6cee817990d90fe5e632df480ebce)

p.    7/14/25: Transfer of 331,337.796744 USDT from 0x24 to 0x54Db825264987F489552C00F53087F174183E072 (0x54) (TX ID# 0x64c10172fa4fa9607bb2c62de3c828350cd934819c168e8916aa1f59e05d8624)

q.    7/14/25: Transfer of 331,438.796744 USDT from 0x54 to **0x74D3CD5Ed77781f04405B5F11458a062BC4123C3 (TARGET ACCOUNT C)** (TX ID# 0x3b3614b78df4c924af14dd9cc7c4a11fab890975f4d630527e9ab7eb9e8c10fb)

## TARGET ACCOUNTS

35.    Using Blockchain Analytics, TARGET ACCOUNTS A, B and C were identified as unhosted wallets containing USDT derived from the aforementioned BEC

fraud scheme.  As a result, USSS investigators contacted Tether and requested TARGET ACCOUNTS be frozen.  Tether voluntarily complied with this request, and confirmed TARGET ACCOUNTS contains approximately 516,322.573342 USDT.  As part of the freeze request the USSS provided Tether with an email address where any claimants and/or owners of the TARGET ACCOUNTS could contact USSS personnel to provide information regarding their wallet addresses.

36.    On August 18, 2025, USSS investigators were notified by Tether that an individual using the name John Mcraith and email address bigblackmajic@outlook.com contacted Tether regarding the restriction placed on TARGET ACCOUNT C.

37.    On August 18, 2025, USSS investigators sent an email to bigblackmajic@outlook.com in an attempt to establish communication and further identify the individual using the email.  At the time of this writing, no response has been received from this attempted communication.  USSS investigators sent legal process in the form of grand jury subpoena and a court order to obtain further information about the user of bigblackmajic@outlook.com.  The records obtained during these requests were reviewed and USSS learned that the account was created on August 12, 2025 in Nigeria, registered in the name of Big Majic and date of birth 1/1/1980.  There was no other significant information provided which would indicate this account was used by a person for legitimate purposes.

**Affidavit – Page 13**

38.     Furthermore, on or about October 16, 2025, Tether notified the USSS Tyler Resident Office of an individual claiming ownership of Target Account A using email address andrewwatkins1963@hotmail.com.  On October 16, 2025, USSS investigators attempted to contact the user of this email address and received a response from someone using the name and identity of Dr. Andrew Watkins, 2628 Pacific Avenue, Suite C, Stockton, California 95204 and telephone number 510-928-1926.  This user also sent USSS investigators a copy of a U.S. Passport number 572976079 bearing the name Andrew Watkins.  This user sent multiple response emails claiming ownership of Target Account A, however, the user failed to contact USSS investigators telephonically or in person.

## CONCLUSION

39.     I submit that this affidavit supports probable cause for a warrant to forfeit all funds, monies, and other things of value up to 516,332.72 USDT seized from the following addresses:

    a.     201,801.06313 USDT seized from 0x0D741AD4bA4801fAAE3947005af557AbB08B7cB1 (Target Account A);

    b.     15,200.63581 USDT  seized from 0xfb156F24f1c0e36095edc66523F8eDb563Da991A (Target Account B);

    c.     299,331.025396 USDT seized from 0x74D3CD5Ed77781f04405B5F11458a062BC4123C3 (Target Account C).

**Affidavit – Page 14**

40.    Based on my experience and the information herein, I have probable cause to believe that the seized 516,332.72 USDT constitutes proceeds from a specified unlawful activity (as defined in 18 U.S.C. § 1956(c)(7) and 18 U.S.C. § 1961(1)), is traceable to money laundering transactions, and is therefore subject to forfeiture pursuant to pursuant to 18 U.S.C. § 981(a)(1)(A).

41.    I also have probable cause to believe that the seized 516,332.72 USDT constitutes proceeds traceable to a violation of 18 U.S.C. § 1343 and/or 18 U.S.C. § 1349, and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

As provided in 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.



bschley
Digitally signed by bschley
Date: 2026.04.02 09:41:57
-05'00'

Brad Schley, Special Agent
U.S. Secret Service

**Affidavit – Page 15**

# EXHIBIT 1

